**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| EASTERN PULASKI COMMUNITY SCHOOL CORPORATION | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. _____ |
| C.H., by Next Friends and Parents S.H. and T.H., THE INDIANA DEPARTMENT OF EDUCATION, DIVISION OF SPECIAL EDUCATION, DR. KATIE JENNER, INDIANA SECRETARY OF EDUCATION | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**VERIFIED COMPLAINT, PETITION FOR JUDICIAL REVIEW, AND PETITION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED PRELIMINARY INJUNCTION, AND OTHER APPROPRIATE RELIEF**

Plaintiff Eastern Pulaski Community School Corporation ("EPCSC" or the "School") by counsel, for its Verified Complaint, Petition for Judicial Review, and Petition for Temporary Restraining Order, Expedited Preliminary Injunction, and Other Appropriate Relief allege and request as follows:

**Jurisdiction and Venue**

1. This action is brought pursuant to the provisions of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, the relevant implementing regulations promulgated under the Code of Federal Regulations, and Article 7 of the Indiana Administrative Code ("Article 7"), 511 IAC 7 *et seq.*, and including all of the rights, entitlements, and procedural safeguards mandated by these laws.

2. This Court has jurisdiction of this case pursuant to 20 U.S.C. §1415, and 28 U.S.C. §1331.

1

3. To the extent that Plaintiff has pendent claims arising under State law, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. This action is brought pursuant to 20 U.S.C. §1415(i)(2)(A) and 511 IAC 7-45-9 and is seeking review of the administrative proceedings, and the decisions and orders issued by the Independent Hearing Officer ("IHO") Bethany Redinbo in Expedited Article 7 Hearing No. HR-047-2024-E (the "Expedited Article 7 Proceeding").

5. This Court is the proper venue for this case because all Defendants reside in Pulaski County, Indiana and all relevant events occurred in Pulaski County, Indiana or otherwise within the South Bend Division of the Northern District of Indiana.

6. An expedited administrative due process hearing was held in the Expedited Article 7 Proceeding on January 25, 2024 through January 26, 2024. The IHO issued a Decision on February 9, 2024, and was received by the School that same day. A true and accurate copy of the IHO's Decision is attached hereto as Exhibit A.

7. Pursuant to 511 IAC 7-45-9(a), "Any party disagreeing with the decision of the independent hearing officer may file a petition for judicial review with a civil court with jurisdiction. Under IC 4-21.5-5-5, a petition for review by a state or federal civil court must be filed within thirty (30) calendar days after the date the independent hearing officer's written decision is received by the party."

8. Pursuant to 20 U.S.C. §1415(i)(2), a party aggrieved by the findings and decision of an IHO in an administrative proceeding "shall have the right to bring a civil action with respect to the complaint presented pursuant to [20 U.S.C. §1415], which action may be brought in any . . . district court of the United States, without regard to the amount in controversy," within the 30-day deadline set by 511 IAC 7-45-9(a).

9.  Furthermore, pursuant to 20 U.S.C. §1415(i)(2)(C) and 511 IAC 7-45-9(a), the Court shall receive the record of the administrative proceedings, hear additional evidence at the request of a party, and shall grant such relief as the court determines appropriate based on a preponderance of the evidence.

## Parties

10. Eastern Pulaski Community School Corporation is a public school corporation under the laws of the State of Indiana, with its main administrative offices located at 711 School Drive, Winamac, Indiana 46996.  EPCSC is a local education agency ("LEA"), within the meaning of applicable law and receives federal funding under the IDEA pursuant to 20 U.S.C. §1401(19) (A).

11. At all times relevant herein, Defendants C.H.., a minor child, and his next friends and parents S.H. and T.H. resided in Pulaski County, Indiana.  C.H. is a resident of EPCSC school district and has legal settlement within its boundaries.

12. The Indiana Department of Education ("IDOE") is a state educational agency" as defined by the IDEA pursuant to 20 U.S.C. §1401(32).

13. Dr. Katie Jenner is the Indiana Secretary of Education. She is responsible for appointing IHOs to preside over IDEA/Article 7 Due Process Hearings. 511 IAC 7-45-3(d). IHOs appointed must meet the qualifications stated in the IDEA (20 U.S.C. §1415(f)(3)(A)) and Article 7 (511 IAC 7-45-8).

14. Throughout this Complaint, the IDOE and Dr. Jenner are collectively referred to as the "State Defendants."

## **General Allegations & Facts Applicable to all Counts**

15. C.H. currently is a 9th-grade student who was attending Winamac Community High School within EPCSC. C.H. was recommended for expulsion from attending school in-person after making a threat regarding guns and threats of school violence.

16. T.H.'s occupation is self-described as being a "professional You Tuber" wherein T.H. maintains a channel on the YouTube media platform entitled "The Military Arms Channel." As of March 6, 2024, T.H.'s YouTube Channel has over 1.44 Million channel subscribers and approximately 360,318,756 channel views. *See* https://www.youtube.com/@Militaryarmschannel (last visited March 6, 2024). In addition, T.H. is also a licensed federal firearms dealer and is a Federal Firearms Licensee ("FFL").

17. Through T.H.'s occupation with many firearms maintained within the home where C.H. also lives, C.H. has access to and has shot and/or handled the following type of guns/weapons:

      a.  AR-15;

      b.  AK;

      c.  Uzi;

      d.  Glock;

      e.  SIG;

      f.  PTR 91;

      g.  Lee-Enfield (World War II bolt-action);

      h.  Mauser K98 (World War II bolt-action);

      i.  .22 rifle;

      j.  lever-action Winchester 9422;

    k.   Henry AR-7 (.22 rifle);

    l.   Ruger super single-six (a .22 revolver); and

    m.   several .22 military training rifles from the World War I/World War II era

*See* Tr. (Day 2) p. 275 l. 8-p. 276 l. 4.

18. C.H. is currently eligible for special education services as a student with a primary disability of autism spectrum disorder ("ASD") and secondary eligibilities of other health impairment ("OHI") and language impairment ("LI").

19. C.H. receives educational services under an individualized education program ("IEP") that is periodically reviewed and modified by his teachers, counselors and his parents, whose assent to the IEP is required by law.

20. C.H. attended the Valparaiso Community Schools during the 2018-2019 school year.

21. For the 2019-2020 school year, C.H. transferred to EPCSC.

22. Over the 2019-2020 school year, the case conference committee ("CCC") reconvened on December 5, 2019 and January 29, 2020, to address behavior concerns for C.H.

23. These concerns led to conducting an updated functional behavior assessment ("FBA") that was completed April 28, 2020.

24. During the 2020-2021[1] and 2021-2022 school years, C.H. withdrew from the schools of EPCSC. Thereafter, C.H.'s parents decided C.H. would be homeschooled utilizing online services of Indiana Connections Academy.

25. In October 2022, C.H. returned to the public education placement during the 2022-2023 school year to attend school with EPCSC.

---

[1] The School has no records concerning the Student's placement during the 2020-2021 school year.

26. During the 2022-2023 school year, the CCC met to hold a CCC on October 4, 2022 for the purpose of acknowledging the student's return to EPCS schools and develop an IEP.   That CCC developed an IEP for C.H. that included goals for behavior, executive functioning, and written expression.

27. After around a month after returning to school, a major behavior incident occurred at school where the C.H. cussed, kicked others, threw objections, and making threats of harm to others. Because of this behavior, the CCC met again to revise C.H.'s IEP on November 11, 2022. During this meeting, the School and Defendants S.H. and T.H. discussed allowing C.H. to come to office for a "cool down" period with suggestions were noted in his IEP.

28. The CCC met again on February 24, 2023 for C.H.'s Annual Case Review ("ACR").  The CCC report noted the IEP team's review of C.H.'s performance included his continued behavior of making inappropriate comments when given undesired tasks.  Defendants S.H. and T.H.  requested reduced assignments and felt that the inappropriate comments were due to his impulsiveness and that the School was "somewhat overreacting." The Teacher of Record ("TOR") was not able to complete the Transition portion of the IEP as C.H. refused to answer the questions from her. A Functional Behavior Assessment ("FBA") was recommended at this meeting.   Thereafter, the EPSCS recommended a reevaluation of the student and generated a notice of reevaluation was generated on March 21, 2023. Thereafter, the Defendants S.H. and T.H. provided written consent for the reevaluation which included a FBA along with a Speech Language evaluation.

29. On March 1, 2023, C.H. was suspended for five (5) days after sending an email to a teacher stating "you will pay for what you have done." Despite safety concerns, the School allowed the Student to return to in-person learning on the conditions that he underwent daily

backpack search and search of the C.H.'s person upon arrival with transportation provided by his parents.

30. The CCC met again on April 12, 2023 to reconvene the ACR during a Facilitated IEP ("FIEP") meeting.  C.H. attended this meeting and stated that he could control himself. He also stated he could do anything academically if he applied himself. The CCC met one more time on May 17, 2023 to review the results of his reevaluation.  The IEP team added additional services to address C.H.'s social pragmatics and added areas of eligibility of LI.

31. Prior to the beginning of the 2023-2024 school year, as noted in his FBA, the speech language pathologist ("SLP") trained C.H.'s teachers on how to specifically implement strategies with C.H. Further, the School's special education director and the SLP trained staff on understanding special education with students in the general education setting.

32. After the first grading period of the 2023-2024 school year, C.H. began exhibiting disruptive and disrespectful behavior. For example, from September 13, 2023 through November 10, 2023, C.H. had nine (9) disciplinary referrals at school. These referrals then escalated in severity such that C.H. comments and threats of harm increased in frequency and violent intent.

33. Specifically, in the fall of 2023, C.H.'s comments and threats included the following:

    a.   comments about making "pipe bombs."

    b.    Early in November 2023, C.H. spoke with a classmate about the amount of ammonium nitrate he had at home.

    c.   There were many times during construction class when he would hold tools or scraps of wood as if they were guns and pretend to shoot someone.  This behavior has persisted despite redirection and accommodations of his behavior plan.

     d.  C.H. also explained how he builds pipe bombs and how he laces his Christmas cookies with cocaine.  At the end of this class period, C.H. then said he should transition to transgender, kill himself, and leave a note blaming the school.

34. On November 10, 2023, C.H. noticed a sweatshirt that another student was wearing and commented that he was "bringing what your shirt says to school tomorrow." The student was not aware that the shirt with "SIG SAUER" on it that she was wearing was a gun and ammo company, however, the teacher looked up the name and was able to determine that what Sig Sauer was. When administration discussed with C.H. his comment, C.H. explained that he was talking about bringing "stickers".

35. As required by 511 IAC 7-44-5, he CCC met for a manifestation determination review ("MDR") after a comment made by the Student. The School believes that C.H. had awareness of the representations of school violence that he made and was able to understand the serious consequences that occur when making references to weapons. and thus, the threat was not a manifestation of his disability.

36. Because the CCC determined that the misconduct was not a manifestation of the Student's disability, the School proceeded with scheduling a meeting to consider expulsion.  This was consistent with the School's right pursuant to 20 U.S.C. §1415(c)(2)(B)(i)(1), 34 C.F.R. §300.508(e) and 511 IAC 7-45-5 and 7-45-6.

37. The School determined that C.H. displays a pattern of behavior including the following:

     a.  an obsession with weapons, using weapons, and/or making weapons and then using them against others;

    b.   attempts to intimidate teachers in the classroom setting with behaviors that include mimicking or mocking others as well as cursing directly at the teacher; and

    c.   making comments in the classroom denigrating others with a different racial ethnicity and/or sexual orientation to make a particular student or students uncomfortable and afraid.

38. On December 18, 2023, Defendants S.H. and T.H. initiated the Expedited Article 7 Proceedings by filing a Due Process Complaint and Request for Hearing ("Due Process Hearing Complaint").[2] The Due Process Hearing Complaint contained a request for an Expedited due process hearing.  Also, the Due Process Hearing Complaint was seven (7) pages and contained forty-two (42) enumerated paragraphs.

39. On December 20, 2023, the Independent Hearing Office ("IHO") was appointed by the State Defendants.

40. On December 20, 2023, the IHO filed a Preliminary Scheduling Order-Expedited. This Order required the parties to hold January 25 and 26, 2024 for hearing dates.

41. On December 29, 2023, the School filed its Response to Petitioners' Due Process Hearing Request and Affirmative Defenses & Supporting Exhibits ("School's Response").

42. On January 8, 2024, the School moved for the IHO to Bifurcate the Due Process Hearing. Specifically, the School sought to bifurcate the Expedited Article 7 Proceedings. In particular, the School stated that most of Defendant S.H. and T.H.'s issues presented were beyond the scope of an expedited hearing and not properly brought under 511 IAC 7-45-10.

---

[2] Consistent with the requirements of Ind. Code § 4-21.5-5-13, the School is in the process of requesting that the Indiana Department of Education prepare and provide a certified copy of the Department of Education's Agency Record in the Article 7 proceedings.  The School's Complaint and related pleadings make reference to the administrative record and the School's pleadings will be supplemented once the certified record is received.

43. On January 10, 2024, the IHO granted the School's Motion to Bifurcate. The non-expedited issues were removed from the Expedited Article 7 Proceedings, were assigned a new hearing number, and were removed from consideration in the Expedited Article 7 Proceedings. The State Defendants assigned Hearing Number HR-052-2024 for the non-expedited issues ("Non-Expedited Article 7 Proceedings"). The State Defendants also appointed IHO Redinbo to the Non-Expedited Article 7 Proceedings and those proceedings remain pending before IHO Redinbo.

44. On February 22, 2024, IHO Redinbo ordered the Non-Expedited Article 7 Proceedings to proceed to hearing the week of March 18, 2024. At or around 4:06 P.M. EST and 6:41 P.M. EST on March 7, 2024, IHO Redinbo issued Orders vacating the hearing dates and re-setting the hearing to April 17, 2024 through April 19, 2024.  However, IHO Redinbo's March 7, 2024 Orders also contained deadlines for the week of March 11, 2024.

45. On January 16, 2024, the Order Setting Issues For Hearing was filed by the IHO setting out one issue for hearing: "[w]hether [C.H.'s] [] behavior on or about November 11 *[sic]*, 2023, which resulted in expulsion, was a manifestation of [C.H.'s] [] disability." *See* Exhibit A at p. 1.

46. From January 10, 2024 through January 25, 2024, the parties engaged in "pre-trial proceedings" in order to prepare for the due process hearing in the Expedited Article 7 Proceedings. These pre-trial proceedings included, but were not limited to, the School's request for the IHO to implement a case management order and hearing timelines for the Expedited Article 7 Proceedings such that the School be permitted to have time designated for its case-in-chief. *See* Tr. (Day 1) p. 20 l.17-p. 22 l. 23; Tr. (Day 1) p. 43 ll. 8-19 (IHO ruled that no change in time or case management would occur); Tr. (Day 2) p. 6 l.16-p. 7 l.2;

Tr. (Day 2) p. 9 ll.15-20. The School asserted to the IHO that established hearing

management of proceedings was integral to the Expedited Article 7 Proceedings. *Id.* The

School also asserted that because of the abbreviated timeline and limited available hearing

time, a designation of time for each party to present their case would be essential for the

Expedited Article 7 Proceedings to not only run effectively and efficiently but to also

comport with the concepts of fundamental fairness afforded to all parties in the Expedited

Article 7 Proceedings to present evidence for their case. Despite this reasonable request, the

IHO did not afford the School with an opportunity within the two dates set for hearing to

present its case-in-chief concerning C.H.'s return to school.[3] Specifically, the IHO allocated

six (6) hours of the Expedited Article 7 Proceedings to Petitioners and five (5) hours to the

School for which each counsel's allotted time was to include both direct and cross

examination of witnesses. However, given the discrepant allotment of time, the majority of

the School's time was required to be used in cross-examination of Petitioners' witnesses.

Therefore, the School was not permitted to present any witnesses for its case-in-chief until

around 4:45 P.M. EST on January 26, 2024. In prehearing orders, the IHO had determined

that the hearing would end at 5:00 P.M. EST on January 26, 2024. *See* Exhibit B at p. 2

(January 18, 2024 Order on Prehearing Order of the IHO)

47. The Expedited Article 7 Proceedings proceeded to hearing on January 25 and 26, 2024.

48. Defendants S.H. and T.H. had the burden of proof in the Expedited Article 7 Proceeding.

49. The conclusions of law in the February 9, 2024 IHO Decision ("IHO Decision"), include:

   a. "…the School did not review all relevant information in the Student's file…By

   not reviewing all relevant information in the Student's file, the School is in

---

[3] In fact, as the record will establish, it was not until the late afternoon of Day 2 of the hearing that the School was allowed to present its case-in-chief. *See* Tr. (Day 2) at p. 312.

violation of 511 IAC 7-44-5(b). This is a substantive violation, not merely a procedural inadequacy." *See* Exhibit A at p. 10 C.8

b. "[t]he conduct on November 10, 2023 of stating 'I am bringing what your shirt says to school tomorrow' followed by 'Ha, Ha, there is no school tomorrow' is substantially similar to the student's behavior that has been document extensively by the School, and for which the case conference committees have been attempting to address." *Id.* at p. 10 C.9

c. "[t]he conduct on November 10, 2023 of stating 'I am bringing what your shirt says to school tomorrow' followed by 'Ha, Ha, there is no school tomorrow' was caused by or had a direct and substantial relationship to the Student's disabilities. 511 IAC 7-44- 5(b)(1)." *Id.* at p. 11 C.10

d. "[t]he conduct on November 10, 2023 of stating 'I am bringing what your shirt says to school tomorrow' followed by 'Ha, Ha, there is no school tomorrow' is a manifestation of the Student's disability. 511 IAC 7-44-5(c)." *Id.* at p. 11 C.11

e. "[h]aving determined the Student's conduct was a manifestation of the Student's disability the Student shall be returned to his placement in the high school. 511 IAC 7-44-5(j)." *Id.* at p. 11 C.12.

50. In the IHO Decision, the IHO ordered the following:

Based upon the Findings of Fact and Conclusions of Law, IT IS ORDERED THAT

1. The CCC shall review the Functional Behavioral Assessment completed in May of 2023 to determine if it needs to be revised based on Student being in high school now verses a middle school setting;
2. The CCC shall review the behavioral intervention plan and modify it as necessary, to address the behavior;
3. Implement the modified behavioral intervention plan; and
4. Return the Student to the placement from which he was removed.

*Id.* at p. 11.

51. The School has timely initiated this litigation to, *inter alia*, seek judicial review of the IHO Decision.

## COUNT I
### (Judicial Review of the IHO Decision)

52. The School hereby re-alleges and incorporates rhetorical paragraphs 1-51 contained in the School's Complaint as if they were fully set forth herein.

53. The IHO Decision was arbitrary and capricious, in clear error, an abuse of discretion, unsupported by substantial evidence and against the weight of the evidence, in excess of statutory authority, and against clearly applicable law in the following ways:

   a. The IHO misapplied established legal standards concerning the manifestation determination.

   b. In determining that C.H.'s actions and behavior were a manifestation of the C.H.'s disability, the IHO inappropriately failed to consider and ignored the School's evidence and testimony.

   c. By failing to establish hearing timelines for the Expedited Article 7 proceedings, the IHO inappropriately denied the School the opportunity to present its case in chief. The conduct of the case by the IHO denied the School its rights to due process and fundamental fairness, and, moreover, prevented the School's ability to present evidence on its behalf.

   d. By not allowing the School the opportunity to present evidence and testimony of the safety threat C.H. poses to the School, the IHO deprived the School the right to assert such arguments, evidence, and testimony. There is a grave concern for the School regarding safety given C.H.'s access to guns. Despite this concern, during the

13

Expedited Article 7 Proceedings the IHO denied the School the right to address C.H.'s safety threat. *See* Tr. (Day 1) p. 24 ll. 7-18; Tr. (Day 1) p. 28 l. 7-p. 35 l. 21; Tr. (Day 1) p. 36 ll. 3-18; and Tr. (Day 2) p. 5 l. 13 (establishing attempts by the School to address C.H.'s safety threat to the School and the IHO denying the School the right to address such during the Expedited Article 7 Proceedings).

    e.  The IHO's order of relief for Defendants C.H., S.H. and T.H. is in clear violation of applicable law. The IHO's order of relief is arbitrary and capricious, based on an inaccurate application of applicable law to the evidence and testimony, and not supported by the evidence.

54. The IHO Decision was factually unsupported by the preponderance of the evidence.

55. The IHO Decision is inconsistent with applicable law.

56. The Order contained in the IHO Decision is not authorized by applicable law.

57. The IHO Decision is erroneous.

58. The School seeks an appeal and judicial review of the IHO Decision, specifically requesting a review of the evidence and record presented in Expedited Article 7 Proceeding and any additional evidence this Court deems appropriate to review, a finding that the IHO abused her discretion by truncating the School's right to a fair hearing to present its case-in-chief therefore resulting in a decision that warrants an order a reversal of the IHO Decision.

**WHEREFORE**, the School respectfully requests that this Court find that the legal conclusions and orders within IHO's Decision are inconsistent with established law and that the preponderance of the evidence from the administrative record, testimony, exhibits and including additional evidence received does not support the findings of facts contained within the IHO

Decision, and therefore determine any award attorney fees and costs in favor of the School, and all other relief determined to be appropriate and just in the premises.

## COUNT II
### (IDOE Appointment of a new IHO)

59. The School hereby re-alleges and incorporates rhetorical paragraphs 1-58 contained in the School's Complaint as if they were fully set forth herein.

60. Pursuant to the IDEA and Article 7, the parties are to be afforded an opportunity for an impartial due process hearing, which shall be conducted by the State Educational Agency. 20 U.S.C. § 1415(f)(1)(A).

61. The IHO appointed to conduct the hearing must possess knowledge of, and the ability to understand, the provisions of the IDEA and its implementing regulations as well as legal interpretations of the IDEA by both Federal Courts and State Courts. 20 U.S.C. § 1415(f)(3)(A)(ii).

62. The IHO in this matter is not familiar with the IDEA, the implementing regulations, and applicable case law. The IHO improperly and incorrectly applied the law to the facts and evidence in the Expedited Article 7 Proceedings.  The erroneous IHO Decision and the manner by which the IHO conducted the Expedited Article 7 Proceedings prevented the School from being afforded the opportunity to fairly present evidence in its defense for an impartial due process hearing.

63. The State Defendants are responsible for appointing IHOs to preside over IDEA/Article 7 Due Process Hearings. 511 IAC 7-45-3(d). IHOs appointed must meet the qualifications stated in both the IDEA (20 U.S.C. § 1415(f)(3)(A)) and Article 7 (511 IAC 7-45-8).

64. The IHO does not meet these qualifications and the School is requesting that this Court vacate the IHO Decision, remand this matter to the State Defendants, and Order the State

Defendants to appoint a new IHO to preside over the Expedited Article 7 proceedings and the Non-Expedited Article 7 proceedings.

65. With the IHO Decision rendered in favor of Defendants C.H., S.H., and T.H., pursuant to 20 U.S.C. § 1415(j), the placement of C.H. has been ordered changed. Absent a stay or enjoining of the State Defendants by this Court, the IHO Decision is enforceable against the School.

66. Further, IHO Redinbo continues to preside over the Non-Expedited Article 7 Proceedings. As stated above, IHO Redinbo previously ordered the Non-Expedited Article 7 Proceedings to proceed to hearing the week of March 18, 2024. Further, on March 7, 2024, IHO Redinbo ordered that the Non-Expedited Article 7 Proceedings shall proceed to hearing on April 17, 2024 through April 19, 2024 and further ordered a series of deadlines for the parties for the week of March 11, 2024.

67. The School seeks for this Court to vacate the IHO Decision, enjoin the enforcement of the IHO Decision, and stay all further proceedings before IHO Redinbo.

**WHEREFORE**, the School respectfully requests that this Court vacate the IHO Decision, remand this matter to the State Defendants, and Order the State Defendants to appoint a new IHO to preside over the Expedited Article 7 proceedings and the pending Non-Expedited Article 7 proceedings. The School further requests all other relief determined to be appropriate and just in the premises.

### COUNT III
### (Fed. R. Civ. P. 65 Temporary Restraining Order, Preliminary and Permanent Injunction pursuant to Ind. Code §§ 20-19-2-8; 20-19-2-16, 511 IAC 7-45-2(h) 511 IAC 7-44-7(d))

68. The School hereby re-alleges and incorporates rhetorical paragraphs 1-67 contained in the School's Complaint as if they were fully set forth herein.

69. As a result of the relief ordered by the IHO Decision, Defendants C.H., S.H. and T.H. are presently demanding that the School abide by the IHO Decision and return C.H. to placement at Winamac Community High School ("WCHS").

70. For reasons stated below and in filings submitted contemporaneously with this Complaint, Count III of the School's Complaint seeks injunctive relief pursuant to Ind. Code §§ 20-19-2-8; 20-19-2-16, 511 IAC 7-45-2(h) 511 IAC 7-44-7(d).

71. The School is organized and existing under the laws of the State of Indiana and is charged with the responsibility of providing a free, appropriate public education to children residing within the district.

72. If a school believes that maintaining a student in his current educational placement is substantially likely to result in injury to the student or others and agreement from the parent to change the student's placement is not forthcoming, a school may bypass administrative procedures and seek injunctive relief with this court. 511 I.A.C. 7-44-7(d); *see also* 20 U.S.C. § 1415(e)(2); 20 U.S.C. § 1415(k)(3); and 20 U.S.C. § 1415(f)(1)(A). Indiana's Administrative Code provides that if the aforementioned standard is met, injunctive relief can be granted to (1) remove a student with a disability from school; or (2) change a student's current educational placement.  511 I.A.C. 7-44-7(d).

73. The School remains concerned that a substantial likelihood for C.H. to cause injury to himself or others exists. Further, the School is concerned that C.H. may cause physical injury to other students in addition to disrupting and interfering with the learning of other students by inducing fear from threats of violence.

74. Further, the School believes that C.H. is substantially likely to cause injury to self or others at WCHS and that any setting at WCHS unless subject to daily searches. Specifically,

testimony from the Expedited Article 7 Proceedings established that C.H. has accessed multiple types of guns. *See* Tr. (Day 1) p. 110 ll. 17-19; p. 112 ll. 23-25; p. 114 l.2-p. 116 l. 5. Moreover, testimony established C.H.'s impulsive behavior concerns which is a threat to School safety. *See* Tr. (Day 1) p. 116 l. 12-p. 118 l. 17; Tr. (Day 1) p. 130 ll. 20-22.; *see also* Group Exhibit C at pp. 75-78 ¶¶ 34-38 (Affidavit of Patsy Brock).

75. The School determined that C.H. displays a pattern of behavior including the following:

   a. an obsession with weapons, using weapons, and/or making weapons and then using them against others. None of these behaviors represent impulse behaviors;

   b. attempts to intimidate teachers in the classroom setting with behaviors that include mimicking or mocking others as well as cursing directly at the teacher;

   c. making comments in the classroom denigrating others with a different racial ethnicity and/or sexual orientation to make a particular student or students uncomfortable and afraid.

76. There are concerns from the School about C.H.'s propensity to engage in behavior that poses a high risk to the health, safety and well-being of the school staff. This is based upon the following:

   a. C.H.'s behaviors demonstrate a marked increase in both the intensity frequency of risk factors;

   b. C.H. demonstrates a continuing increased obsession with guns, bombs, and violence over the course of his attendance at WCHS; and

   c. C.H.'s obsession appears to be more than beyond an intense interest; rather, his statements and behaviors also include an intent and focus on harming others.

77. Further, in the Expedited Article 7 Proceedings, testimony from Defendant S.H. as well as the behaviorist for Defendants C.H., S.H., and T.H. established that C.H.'s behavior is characterized as erratic, impulsive, and unpredictable. *See* Tr. (Day 2) p. 43 l. 21; *see also* Tr. (Day 1) p. 198 ll. 11-25, p. 200 ll. 12-25.

78. The School believes that an emergency exists and that failure to grant immediate relief in the form of an *ex parte* Temporary Restraining Order and Hearing for Preliminary Injunction will result in a continuing risk of immediate serious injury and other irreparable harm to the School and its students and its staff.

79. The School reasonably believes that if C.H. returns to WCHS there remains a substantial likelihood that C.H. will cause injury to himself or to others due impulsive behavior and C.H.'s access to weapons.

80. The School has reviewed all possible options to minimize the risk that C.H. currently poses against the safety of the staff and students of WCHS.

81. The School remains ready to allow C.H. to return to WCHS provided that he is subject to a daily search of weapons to ensure that C.H. does not honor his threats of school violence especially in light of C.H.'s current emotional needs and impulsive erratic behaviors.

82. The Defendants have not agreed to the School's proposal of ensuring the C.H.'s return to school must include a daily search for weapons to ensure there is no risk of injury to staff and other students.

83. In balancing C.H.'s rights under the IDEA and the rights of the School in maintaining a safe environment for all students, it is just and proper for this Court to exercise its equitable power to immediately restrain and enjoin C.H. from placement at WCHS without a daily search for weapons.

84. Based upon the above facts and potential risk of harm to the School and other students, the School has demonstrated a reasonable likelihood of prevailing in a change of placement for C.H. in a judicial proceeding.

85. However, the threat of injury to the School's students, significantly outweighs the harm that an injunction may inflict upon C.H.  C.H.  is not harmed by being subjected to a daily search for weapons upon entry to school.

86. Additionally, the public interest would be better served by ensuring that C.H., whom the Defendant and Defendants' psychologist has described as un from an environment where he is likely to cause serious bodily injury to other students.

87. The School's remedies at law are inadequate and would cause irreparable harm pending the resolution of a substantive action if a Temporary Restraining Order and Preliminary Injunction are not issued.  C.H. threatens serious bodily injury to classmate(s) and potentially to himself.

88. As a governmental organization, the School requests waiver of a security.  Fed. R. Civ. P. 65(c).

**WHEREFORE**, the School respectfully requests that this Court grant it all equitable relief to which it is entitled, including, but not limited to:

a.  Granting the School's Request for Temporary Restraining Order immediately by entering an Order enjoining and restraining C.H. from attending or entering Winamac Central High School;

b.   Setting a date for hearing on the School's Motion for Preliminary Injunction, giving due and personal notice thereof to Defendants C.H. S.H. and T.H., and

upon such hearing that this Court enter an Order enjoining and restraining C.H.

from attending or entering Winamac Central High School; and

c.  All other relief that is appropriate under the circumstances.

## COUNT IV
### (Stay of Administrative Proceedings & Stay of State Defendants from Enforcing Administrative Proceedings)

89. The School hereby re-alleges and incorporates rhetorical paragraphs 1-88 contained in the

School's Complaint as if they were fully set forth herein.

90. For reasons stated below and in filings submitted contemporaneously with this Complaint,

Count IV of the School's Complaint requests that this Court stay all administrative

proceedings involving the parties.

91. The School seeks a stay of Hearing Number HR-047-2024-E. As stated above, this is an

administrative proceeding presided over by IHO Redinbo appointed by the State Defendants

pursuant to 511 IAC 7-45-3 wherein IHO Redinbo rendered the February 9, 2024 IHO

Decision from which the School seeks judicial review by this Court.

92. The School also seeks a stay of Hearing Number HR-052-2024. As stated above, this is a

pending administrative proceeding presently presided over by IHO Redinbo appointed by the

State Defendants pursuant to 511 IAC 7-45-3.  Pursuant to March 7, 2024 Orders by IHO

Redinbo, the matter is presently set for hearing April 17, 2024, through April 19, 2024, with

a series of deadlines for the week of March 11, 2024.  As such, HR-052-202 remains active

and continues to proceed before IHO Redinbo.

93. The School seeks to stay the administrative proceedings, HR-047-2024-E and HR-052-2024.

under and by virtue of Ind. Code § 4-21.5-5-9 as well as this Court's inherent docket-

management power within the meaning of the All Writs Act, 28 U.S.C. § 1651(a). *See Nken*

*v. Holder*, 556 U.S. 418, 433-34 (2009) (citing *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

94. The School is likely to prevail on its claims before this Court as the School intends to proceed with designated facts and evidence before this Court to show that the February 9, 2024 IHO Decision in the HR-047-2024-E administrative proceedings should be set aside by this Court as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

95. Further, a stay of all of the pending administrative proceedings by this Court will promote the public interest as well as the interest of judicial economy in the State of Indiana in that it will preserve the status quo and avoid an undue hardship to the School

96. It is the School's assertion that the School has set forth a reasonable probability that the February 9, 2024 IHO Decision in HR-04-2024-E will be found by this Court to be invalid per Ind. Code § 4-21.5-5-9(a)(1).

97. For the foregoing reasons in Count IV, the School respectfully requests that this Court expeditiously stay administrative proceedings in the HR-047-2024-E and HR-052-2024 matters pending judicial review.

**WHEREFORE**, the School respectfully requests that this Court stay the State Defendants from any enforcement and action of any further proceedings between or involving the School and Defendants C.H., S.H., and T.H. in the HR-047-2024-E, and HR-052-2024 administrative proceedings. The School further requests all other relief that this Court deems just and proper in the premises.

## <u>VERIFICATION</u>

I affirm under the penalties of perjury that the above statements are true and accurate to the best of my knowledge.

/s/ Patsy A. Brock
Patsy A. Brock, *Director of Special Education for Eastern Pulaski Community School Corporation*

Respectfully submitted,

**LEWIS & KAPPES, P.C.**

/s/ Monica J. Conrad
Monica J. Conrad, Attorney No. 17820-98
Scott A. Pyle, Attorney No. 25060-89
**LEWIS & KAPPES, P.C.**
8585 Broadway, Ste. 610A
Merrillville, Indiana 46410
(219) 648-2072 (tel); (219) 525-4980 (fax)
Email: mconrad@lewis-kappes.com
        spyle@lewis-kappes.com

*Attorneys for Plaintiffs*